The central issue in this appeal is whether a creditor who is a party to a broad arbitration agreement with a broad delegation clause should be allowed to circumvent that agreement by filing an involuntary bankruptcy petition to resolve his pre-petition disputes with a debtor. The answer is no, and the bankruptcy court erred in refusing to compel arbitration. The district court compounded that error by holding that Neutra, who is the sole owner of the debtors, lacks standing to appeal the bankruptcy court's orders, even though no one else had the right or incentive to undertake such an appeal. I will first address the standing issue because it is a threshold issue, then I will talk about Neutra's procedural arguments concerning mootness and waiver of arbitration. So with respect to standing, there is no question that Neutra has Article III standing to appeal the bankruptcy court's orders. It sustained an injury in fact that is traceable and addressable. The issue is whether it has prudential standing under the so-called person-agreed standard, and it does, I submit, for three different reasons. First of all, Neutra satisfies the person-agreed standard, which requires that a person be directly and adversely affected pecuniarily, which occurs when a bankruptcy court order diminishes his rights, diminishes his property, increases his burdens, or impairs his rights. That's a formulation that even Mr. Terry agreed to on page 20 of his brief. Now, Neutra is the sole owner of ACES, the debtor, and it had the right to control ACES' business. That right was lost when the involuntary petition was allowed to go forward, when a Chapter VII trustee was appointed, and when that Chapter VII trustee took over ACES with the statutory charge to wind it up as expeditiously as possible, and that diminished Neutra's property interest and its investment in ACES. That is enough to amount to person-agreed standing. Counsel, imagine a corporation that has 100 shareholders. No bonds, no other creditors, it's 100 shareholders, they get washed out in bankruptcy. Can the shareholders appeal? That's a more difficult question, Judge Oldham. I mean, isn't Neutra just a shareholder? I think in that case, you run into the roots of the person-agreed standard, which is a concern about the multiplicity of appeals, that anybody and everybody, I think the word in technical was umpteen appeals. We don't have that situation here. We have one owner, and truly, it's the only aggrieved party here. Then what if my corporation only has one shareholder? I'm sorry? What if my corporation only has one shareholder? I think that's a much better case for person-agreed standing. And how do you square that with, I don't know how many cases that say shareholders can't appeal? Well, what you're talking about, I think, is the shareholder rule, so to speak. I think that rule yields in a case of this nature, where you have a situation where control was wrested away from the sole owner, number one. Number two, I think they're using the person-agreed standard very inflexibly to try to insulate a bankruptcy court ruling from effective review. That's another factor that I think we have going on here. What would be a good example of a precedent where we allowed shareholders to appeal? Or just one shareholder? Well, um, I don't believe it's come up. You know, technical was a totally different case involving a non-creditor owner who was challenging the appointment of a special counsel. Because shareholders are injured all the time in an Article 3 sense in bankruptcy proceedings. I mean, I would think virtually every bankruptcy, at least Chapter 11s, would injure them. So I'm just curious how it could never have come up before. Maybe the rule is just that shareholders can't appeal. At least that's your friend on the other side's view. Well, I think they should be able to appeal in a case where otherwise, unless nutrient can appeal, effectively no one can appeal. Because of course, ACEs can appeal, cannot appeal. It's been taken over by the Chapter 7 trustee. The Chapter 7 trustee has no incentive to appeal. He's just been installed as the trustee. The last thing he wants to do is appeal. And indeed, I would argue that he has no authority to appeal under Section 704 where his duties statutorily are to, you know, wind up and close out the estate as expeditiously as possible. So I think for him to appeal would actually conflict with his statutory duties. And you know, I think this is what, where we get to the one shareholder rule. No one else in this case was agreed. So these concerns about the multiplicity of appeals just don't exist here. And I would urge the Court to look at the Seventh Circuit case of carbide cutoff, which I don't recall that it was necessarily a sole shareholder case, but it was along that line. And the Court applied a very flexible approach to say we're going to reach the merits because otherwise this appeal is effectively unreviewable. So I think that's the second reason why we have, why we should have a aggrieved person standing. The third is that I don't think the standards should be rigidly and mechanically applied in a case to just avoid reaching the merits. The standard is not required by the Bankruptcy Code. It's not in the statute. It used to be in the Bankruptcy Act, but Congress repealed it. And I think more generally, we're talking about prudential standing here, which is very discretionary. And I think the vitality of prudential standing is questionable after cases like Lexmark and Susan B. Anthony, where the principle is to apply it rigorously is contrary to the principle that federal courts are obligated to hear and decide cases within their jurisdiction. And that's exactly what we have here, a case within the court's jurisdiction. And I would urge the Court to reach the merits because I think it's a very important question about arbitration and arbitrability. And to that, I'd like to turn, if I may, the question of arbitration. The Bankruptcy Court gave two reasons for denying the motion to compel arbitration, and I think both of them turned on a misperception of the actual dispute that we're seeking to arbitrate. First of all, the Court held that the arbitration agreement is inapplicable to the filing of an involuntary petition. That ruling I submit is wrong and it's irrelevant. It's wrong because we're not seeking to arbitrate the propriety of the involuntary petition. What we're seeking to arbitrate is the pre-petition dispute over whether ACES was making fraudulent transfers in an effort to avoid paying Mr. Terry his arbitration award. They're pre-petition disputes involving fraudulent transfers. I'm sorry, did you all have pre-petition arbitration? I'm sorry? Didn't you have pre-petition arbitration? There was a pre-petition arbitration, that's right, that involved a whole bunch of things concerning Mr. Terry and whether he was terminated for cause and so forth. There was one fraudulent transfer issue litigated in that arbitration and found against Mr. Terry. Why was this not part of the pre-petition arbitration? There were allegedly more fraudulent transfers after the arbitration award was entered and confirmed. So there's still pre-petition transfers and he was, in fact, in the process of litigating those when he decided he didn't like the way the state court proceedings were going and he filed the involuntary petition. And when was the first time that your client moved to compel arbitration? Forty-seven days after the involuntary petition was filed. In relation to the trial? About two days before, I believe. I'm curious if you are familiar with a litigation conduct case. What I mean by that is a litigation. There was a case decided on May 28th about that, yes. That would allow a two days before trial to invoke an arbitration clause or arbitration agreement of any kind. Well, I think the difference in that case, if we're talking about the same case, Your Honor wrote it, I guess number one is I would argue that in our case the issue of litigation conduct waiver should be decided by the arbitrator because we have a very broad delegation clause here, extremely broad, that allows the arbitrator to decide whether a dispute is subject to arbitration in the first place. That delegation clause was lacking in that particular case. Also that case involved continual conduct on the part of the plaintiff, I think it was the plaintiff, to institute litigation. Not so here. I mean, we're the defendant. And that case, I think, involved many, many months, if not years, of litigation conduct. We're talking here 47 days of what they call fast-paced litigation. So I think it was entirely timely. Moreover, I don't think there was substantial invocation of the judicial process for the simple reason that, again, we weren't litigating the fraudulent transfers, the things we're seeking to compel arbitration of. They were litigating the technical issues of whether the involuntary petition should have been allowed under Section 303. So they weren't litigating the very issues sought to be arbitrated, unlike the May 28th case. Yeah, that case certainly seems different. The thing I'm trying to figure out is whether it's meaningfully different because your client filed a motion to dismiss, right? Well, the debtor did and Nutra did, yes. I'm sorry, I was just focusing on the debtor. Both did, yes. So Nutra filed a motion to dismiss and in the MTD could have said, oh, and by the way, it should also be dismissed because this is actually in the world of arbitration, not the world of litigation, and we could have sorted it all out at that point, right? Well, that's exactly what it did. It just did it 47 days into the proceeding, which, again, was so fast-paced. I mean, it was, everything was expedited and last-minute, and I think compared to some months of delay or 18 months or in the May 28th case, I think years, we're talking a very short period of time here. There's also no prejudice for the simple reason that not only was the period short, but the litigation was over what Mr. Terry had instigated, the Section 303. The litigation was not over the fraudulent transfers, which is what we sought to arbitrate. If I may go back, I guess, to the question of whether the bankruptcy court got it wrong, so . . . So what's the rule that you would propose that we apply here? At what point is it too late to invoke arbitration? Well, I think the case . . . Not, you know, on the eve of trial. It's a case-by-case situation, obviously, but I think when you have, like the May 28th case, a series of acts, filings, motions, actions that are utterly inconsistent with arbitration that go on over a period of months and years . . . Like a motion to dismiss? Sorry? Wouldn't a motion to dismiss be dispositive? A motion to dismiss was dispositive, but at the same, but NUTRA didn't file that, number one, and ultimately, 47 days later, after the filing of the involuntary, NUTRA did file a motion to compel arbitration. So I think it was timely. There was no prejudice. You know, they would say, well, we litigated and we litigated. What they litigated were their Section 303 issues, which would have been litigated anyway. They weren't what we were trying to compel to arbitration. It would be a very different case if we litigated the very same things we were trying to compel to arbitration. So what did NUTRA do? I take your point that it was another party that engaged in alleviation conduct. What did NUTRA do prior to day 47? Well, NUTRA showed up very late, realized that in order to be able to appeal, it would have to actually show up at the trial. And a couple days before the trial, NUTRA joined in a motion to, actually, NUTRA filed along with HCLOF, another entity that's involved in the second companion appeal, actually filed the motion to compel arbitration, saying that, look, if we can't appeal, nobody can appeal. And certainly ACES cannot appeal. ACES filed a joinder to that, but it said, we disagree. We think we can appeal. And ultimately, it could not, of course, because the trustee was appointed. So NUTRA really hadn't done anything before the 47th day when it filed the motion to compel arbitration.  Sorry? And the motion to intervene. The motion to intervene, right, which I think was right around the same time. But we're not reviewing the denial of the intervention motion. No, we're not reviewing that. No, no. Now, with respect to arbitration, when the district court said that the arbitration agreement is inapplicable, wrong, because, again, we're seeking to arbitrate the propriety of the, we're not seeking to arbitrate the propriety of the involuntary petition. Also, irrelevant because of the delegation clause. It's the job of the arbitrators to determine whether the applicability of the arbitration agreement. The court then gave a second reason where it purported to exercise discretion under the two-part test of national gypsum and gandy. And I submit to you that the court misapplied that two-part test. Step one asks whether the underlying nature of the proceeding derives exclusively from the bankruptcy code. Well, the underlying nature of the proceeding here are the prepetition fraudulent transfers, which do not derive exclusively from the bankruptcy code, don't derive from the bankruptcy code at all. And, of course, it was Mr. Terry who made the decision to exit the state court litigation that he instituted to go into bankruptcy. So when you answer the first question, no, I think the inquiry stops. But if you were to look at the second step of the analysis, would arbitration of the proceeding conflict with the purposes of the bankruptcy code, I would say no, they've not met their burden under the epic test of showing a clear and manifest intent to displace the Federal Arbitration Act. Again, we're not seeking to arbitrate the propriety of the involuntary petition. It's just the dispute over the prepetition transfers. If anything, I would suggest that what Mr. Terry did conflicts with the bankruptcy code because what he did was he tried to use an involuntary petition to resolve what effectively was a two-party dispute over alleged prepetition transfers where he'd already started the state court litigation. So I think that actually conflicts with the bankruptcy code. So the bankruptcy court ultimately had no discretion to deny the motion to compel arbitration, and it erred in doing so, and I would refer to this court's Kubala opinion, K-U-B-A-L-A, I believe it's spelled, which says that if there's a delegation clause, as there is here, a motion to compel arbitration should almost always be granted, and I think that's absolutely the case here. It should be granted. I see my time is up unless the court has any further questions. You've saved time for rebuttal. Thank you, Your Honor. Mr. Lamberson. Good afternoon, Your Honors. May it please the court. Philip Lamberson on behalf of Joshua Terry, the appellee in this action. Before I turn to the legal issues, I wanted to point out for Your Honors the true nature of this proceeding, and this is highlighted by NUTRA's statement of issues in its brief, which is that at this point NUTRA has dropped all merits-based challenges to the order for relief. They have two issues. The first issue is whether NUTRA has standing. The other issue is why the bankruptcy court should have dismissed the ACES case and deferred consideration of the involuntary petitions to arbitration or mediation, which are forum challenges. They're not substantive challenges. Nobody is alleging that there weren't sufficient petitioning creditors. Nobody is alleging that Mr. Terry had a bona fide dispute as to his claim, anything like that. It's basically a standing challenge to get into this courtroom and a forum challenge as to who should have heard the petitions. The reason I note that, Your Honors, is because the limited nature of the appeal being presented to you highlights the fact that NUTRA, in fact, does not have standing to raise these issues with the court. Let me address first the standing issues and specifically the statutory standing issue. I know in Lexmark the Supreme Court said we should call it zone of interests. I actually prefer statutory standing because I think it highlights the issue. But as we pointed out in our brief, Section 303D of the Bankruptcy Code only allows a debtor or a general partner of a debtor to file an answer to an involuntary petition. The bankruptcy rules are exactly the same. In fact, note that those are the only pleadings allowed in connection with an involuntary. As you all are aware, involuntary bankruptcy is a congressionally created process. It's not common law. It's statutorily created. And the statute delineates exactly what parties may participate. So by statute, NUTRA never had standing or any statutory right to participate in the involuntary process on its own. And, Your Honors, as you're well aware from the person that grieved standing issues, NUTRA's standing did not get any broader on appeal. When they showed up in this court, they didn't have any better rights than they had under the Bankruptcy Code and the Bankruptcy Court. It's still left without a ticket based on the structure that Congress enacted for litigating involuntary petitions. So hearkening back to NUTRA's very narrow issues for this appeal, their only complaint is where the case was decided. But NUTRA's not a fighter in that fight, right? They're a bystander. So they don't get to pick or complain about what forum the action was heard in. So clearly just based on the statutory construct of the Bankruptcy Code, NUTRA had no standing to raise the involuntary issues, and it doesn't have any standing to appeal here. Turning to the person that grieved standard, as you all are very familiar, the standard is that the appellant must show that they are directly and adversely affected pecuniarily by the orders for relief. So it's not just a matter of they have some general standing, they don't like bankruptcy, bad things might happen to them. They've got to show that they were financially affected by the orders for relief, and specifically, again, not just the orders for relief but the forum in which they were held. The technical decision, which Mr. Levenger cited, addresses this and actually deals with an equity holder determined not to have standing because Judge Willett stated that only those with a direct financial stake in an order can appeal it, and the injury complained of must be a direct result of the appeal. Again, based on the forum challenges here, that's an impossible standard for them to meet. I would point out Mr. Levenger talked about the appointment of the Chapter 7 trustee and that the trustee doesn't have any incentive or motivation or I think he said even authority to pursue an appeal. That's not correct. A trustee is a general representative of the estate, and I believe this court's ruled that a trustee has standing to raise any issues in a bankruptcy case because they are a representative of the estate. I would also point, Your Honors, to the C.W. Mining case, 636 F. 3rd, 1257, which is a Tenth Circuit case from 2011. As it relates to a lot of the issues here, including the trustee issue raised by Mr. Levenger, that case is directly on point. In that case, the Tenth Circuit held that the managers of a putative debtor did not have standing to appeal the granting of an involuntary petition. The trustee took over. The trustee exercised those rights. The Tenth Circuit cited the Weintraub case, the U.S. Supreme Court's Weintraub case, which basically says a trustee is a general representative of the estate and has the authority to exercise control over property of the estate, including privilege, including litigation rights. So that raises the issue of why is NUTRA appealing? Why are they here? Why did they spend so much money to show up in this court? So as the bankruptcy court noted in her ruling, NUTRA is controlled by James Dondero and is part of the Highland Capital web of companies. So in intervening and pursuing the appeal to Judge Fitzwater and pursuing this appeal, NUTRA is really just doing Mr. Dondero and Highland Capital's bidding. It actually makes no economic sense for the equity holder of a company that is unquestionably being denuded of its assets to object to bankruptcy and then appeal that bankruptcy. NUTRA should have been leading the charge into the bankruptcy court, not objecting to it. So paraphrasing the U.S. Supreme Court in the Hollingsworth case, NUTRA is accountable to no one but itself and thus can't be considered a representative or agent of the debtors for purposes of standing. That's the trustee's job. Turning quickly to mootness, we addressed this in our brief. 11 U.S.C. 348 addresses the effect of a conversion of a case. Explicitly in Section 348, conversion of the case is a new order for relief under that chapter. So we had a prior order for relief, which was the involuntary petitions, turned into an order for relief under Chapter 7. When the case was converted to Chapter 11, we have a new order for relief. The cases that address these issues unanimously, I couldn't find a single case that disagreed with this, agree that an appeal of an order for relief after conversion is moot and has to be dismissed. And that includes the Second Circuit and the Eleventh Circuit. It's the Speer case. We actually cited the District Court case in our brief that was affirmed by the Second Circuit. That's at 771 Federal Appendix 25. That was in 2019. And the J.B. Lavelle case, which is an Eleventh Circuit case. Counsel, I'm sure you're going to get to this and you're going to explain why we shouldn't agree with your friend on the other side about arbitration. But I have a more limited question, which is do we have the judicial power to agree with him on arbitration? Like, could we, in fact, enter an order that said, no, should have been sent to arbitration, super broad arbitration clause, could we do it, not should we? Yeah, and so that goes to the heart of the mootness issue, which is can the court grant effective relief? And the simple answer is no. And that's exactly what the cases that address the conversion and the effect of a new order for relief address, which is there was an order for relief under Chapter 7. The ACES cases proceeded under that for a very short time. Then the case was converted to Chapter 11, new order for relief, and then 95% of the case proceeded under Chapter 11. So, frankly, and this gets to my next point, Judge Oldham, which is part of the problem here is that NUTRA appealed the wrong order, right? NUTRA should have appealed the conversion order. There was no impediment for them doing that. They could have done that. They didn't do that. And that goes to the heart of your question, Your Honor, which is if you had the 11 issues in front of you, then I think you'd still have a lot of difficulty because of equitable mootness doing anything, but this is actual mootness. You don't have plenary jurisdiction over the actual order that most of the case proceeded under. So are you saying that we should dismiss the appeal instead of affirming? What should we say? Your Honor, if you decide that the appeal is moot, then I think the appropriate stance would be to dismiss it as moot. Yes. But you're in better shape with an affirmance, aren't you? Well, but again, the only thing that's... I know what you're getting at, I think, which is basically that the effect of dismissing an appeal as moot is that the lower court orders then are... They're not necessarily vacated, but they don't have the same effect. So two things. Number one is, if you determine to dismiss the appeal as moot, I think that would only affect the Chapter 7 order for relief. It wouldn't affect the Chapter 11 issues because, again, that was a different order for relief, different case. A different case in bankruptcy terms. The other thing is that I think that would only affect the actual order for relief. In other words, Diane Reed was the trustee, a Chapter 7 trustee. Mrs Reed filed a fee application. It was ultimately allowed by the court. I don't think dismissing this as moot would vacate that order or affect that order. I think it would just affect the preliminary order for relief. Turning to the arbitration issues... One of the really interesting issues here, which I think actually was not highlighted all that much in the briefing, although it was raised in a very cursory sense in Judge Jernigan's ruling, is the idea of when does an arbitration end and when does collection on the arbitration and now judgment begin, right? And we don't have to guess at that. The Federal Arbitration Act actually tells you that in general terms. And if you look at the Limited Partnership Agreement, which is the origin of the arbitration rights here, and specifically Section 612B7, it says that judgment on an arbitration award may be entered by any court with jurisdiction. So taking that fact and looking at 9 U.S.C. 9, the Arbitration Act, that states that if an arbitration agreement allows for judgment on an award, like this one did, the applicant may apply for an order confirming the award, and the court must grant that order. You must get that judgment. And here's what's really interesting. 9 U.S.C. 13, again, part of the Arbitration Act, part of their statutory basis as to why they prevail, says judgment so entered, talking about an arbitration award, shall have the same force and effect in all respects as and be subject to all of the provisions of law relating to a judgment in an action. So the Arbitration Act actually flies in the face of Neutra's argument that Mr. Terry had to keep going back to arbitration. And I think this is exactly what Judge Jernigan meant when she said in her short ruling on the motion to dismiss that the parties already arbitrated, they have a judgment, and this is a collection action. This is an enforcement remedy. This is, per Section 13, another provision of law related to a judgment. Because the only ticket you have to get into an involuntary issue is be a creditor, right? Be a creditor that doesn't have a bona fide dispute as to your claim. And that's what a judgment is. So, Judge Smith, actually, you have the only case I could find on Section 13 that at least addresses this. It's the Tricon case, 718F3, 448 from 2013. And in that case, citing Section 13, you ruled that a judgment confirming an arbitration award is like any other civil judgment, and therefore the post-judgment interest rate at the federal statutory rate applies, notwithstanding it's an arbitration award, unless the parties agreed otherwise, and in that case they didn't. So this whole idea of Mr. Terry has to keep arbitrating is completely inconsistent with the construct of the FAA, which clearly indicates that, again, if the parties have agreed you can get a judgment, this arbitration agreement did, then you get a judgment, and that's like any other judgment that any other party would have. It's not defective. It's not limited in how you use it. It doesn't prevent you from being a petitioning creditor. You're allowed to use that judgment just as if you'd gotten it after a jury trial or a bench trial. So turning to National Gypsum-Gandy and the Henry case, I would point out Mr. Levinger indicated that the issues to be arbitrated were fraudulent transfers. That is not what the motion to dismiss that was filed with the bankruptcy court said. The only arbitration issue ever raised with the bankruptcy court was in ACIS's motion to dismiss, which NUTRA adopted, and it asks for arbitration of the involuntary petitions. Clearly. It clearly asks for that. It doesn't mention fraudulent transfers anywhere. And I'm confused because of that, frankly. I'm confused as to what NUTRA thinks is arbitrable here. And they talk about fraudulent transfers, but who's asserting these claims? And against whom? And for what? Right? Because in order to get into an arbitration, you've got to have an agreement between the litigants that compels arbitration. And that's not ACIS. We're not going to sue ACIS for fraudulent transfers. Mr. Terry already had a $8 million judgment against ACIS. You're going to sue the transferees for the fraudulent transfers. Well, who are they? And do they have an arbitration agreement? Because there's not one in front of Your Honors or in the record as to how you would compel arbitration against some undefined, unknown defendants. NUTRA's never been sued for a fraudulent transfer, and obviously it doesn't point to any such fact in its briefing. So that argument falls out of the gate for step one of an arbitration analysis, which is there's no agreement. Turning to what I think is the real issue that the debtors at least raise, which is the arbitration of the involuntary petition, I would submit that National Gypsum, Gandy, and this Court's more recent Henry opinion is conclusively controlling on that issue. If a proceeding arises exclusively from the bankruptcy code, the Court has discretion to deny arbitration, and in fact this Court has said a couple of times that the bankruptcy court has significant discretion to deny arbitration. I don't think there's any doubt that Section 303 and the enabling rules for an involuntary petition arises exclusively from the bankruptcy code. There is no corollary in any other kind of federal or state or civil law. In that case, the Court had significant discretion to deny arbitration. Judge Dernigan did deny arbitration, and actually even though she issued it within about 24 hours after ACES filed its motion to dismiss, it was actually a pretty quick opinion, but well-reasoned as to why she was doing it. As it relates to the fraudulent transfer argument, again, Gandy is directly on point. What this Court ruled in Gandy was that the assertion of fraudulent transfers that would be subject to arbitration, there they had an arbitration agreement, that's something that the Court can defer. The Court can say that it can deny arbitration, use its discretion to deny arbitration. Interestingly, Gandy even addressed the expeditious and equitable distribution of assets as a central purpose of the bankruptcy code. Judge Dernigan found that a very compelling reason to grant the orders for relief here. There are allegations of transfers to offshore entities in the Gandy case, which you already know is the same here. And in Gandy, this Court even noted that bankruptcy is actually a preferable forum to address those issues because the federal bankruptcy court via the federal system has authority and rights that state courts don't have, and arbitration panels definitely don't have. One point on the Henry case, there's a Second Circuit case called Belton 961 F. 3rd 612 that was issued in 2020. Belton addressed exactly the same issues as Henry. It was litigation of a discharge injunction and in fact cited Henry extensively and indirectly followed it. CERT was denied in that case earlier this year by the Supreme Court. I know that's not necessarily precedent, but it would indicate that the Supreme Court is apparently not too concerned about deferral of arbitration and bankruptcy because that would have been an opportunity to take it up. So finally on the arbitration waiver, Mr. Levenger, I think there were actually questions from the Court about this, but Mr. Levenger indicated that what NUTRA did in connection with the involuntary was relatively limited. I don't think it's fair to say that what NUTRA did was relatively limited for two reasons. One is ACES, the putative debtors were the predecessor litigants to NUTRA for all purposes. So I don't think it's fair to say that NUTRA doesn't get stuck with what ACES did because the origin of this, everything that happened in bankruptcy court happened through ACES, the debtors. In their motion to intervene, NUTRA admitted that they controlled ACES, that the management was pursuing their interests and so I think all of the actions taken by ACES can absolutely be attributed to NUTRA for purposes of analyzing a waiver. Just quickly, I was going to mention the International Energy of Interest case as well, Judge Olamir case. Our brief goes through in extensive detail the factors. They're covered here. There are many motions filed, there was discovery taken, it was on the cusp of trial. Every single factor fits in terms of litigation and conduct waiver here. Thank you, Mr. Lamerson. Mr. Levenger for rebuttal. Counsel mentioned the CW case. I think actually the CW case, in particular the very last paragraph of the opinion supports our position. The court said we do not hold that former managers cannot appeal a bankruptcy court order in their own right. If the debtors' managers themselves have been injured pecuniarily, they can appeal as persons agreed. Such an appeal must be brought on their own behalf, not on behalf of the debtor. That's exactly what NUTRA is doing here. It's appealing on its own behalf, claiming that its property has been diminished, its burdens have been increased, and its rights have been impaired in the sense that it lost control as a result of the involuntary petition. So that gives it agreed person standing. CW, I think, supports our position. On mootness, there's no mootness here. The conversion from a Chapter 7 to a Chapter 11 had no effect whatsoever on this court's ability to resolve the dispute here, which is whether Mr. Terry could circumvent the arbitration agreement by filing an involuntary petition to resolve his disputes with ACES. That issue is exactly the same, regardless of whether the involuntary petition had been started as a 7 or an 11, because either way the filing would violate the arbitration agreement under our argument. It doesn't matter. Now, their mootness argument might have some teeth if we were actually challenging the merits of the order for relief in connection with Section 303 or if we were challenging the court's findings and conclusions in connection with Section 303, but we're not. That's not our challenge here. That's not what we're appealing. We're appealing the court's order denying our motion to compel arbitration, which was merged into the order for relief that was appealed. So there's no mootness. I still think they're confused about what we're seeking to compel arbitration of. We are not seeking to compel arbitration of the involuntary petition. They say that numerous times in their brief. We're seeking to compel arbitration of the prepetition fraudulent transfers, and that's exactly what the motion to compel arbitration said. In that regard, this case is nothing like Gandy because what Gandy involved were statutory fraudulent transfer actions under Section 544, 548, and 550. In other words, the strong-arm causes of action that belong to a trustee to assert on behalf of a creditor. Again, that's not what we're seeking to arbitrate here. We're seeking to arbitrate his prepetition claims that fraudulent transfers were made in an effort to circumvent the arbitration award, and that falls precisely within the scope of the arbitration agreement, putting aside the fact that that's an issue for the arbitrator under the delegation clause. But the arbitration agreement, Section 6.12, applies to any dispute arising out of, relating to, or in connection with, the broadest language possible, the agreement, or otherwise involving the partnership, the partners, and or any GP party, general partner party. So that would include not only ACES, but also NUTRA, and also Mr. Terry. It falls completely within the arbitration agreement. Finally, they mentioned the Henry case. That was whether an effort to bring suit violated a discharge order or discharge injunction, very much in conflict with the bankruptcy code. Again, nothing we're seeking to arbitrate here even implicates bankruptcy considerations. We're not seeking to arbitrate the involuntary petition, which, notwithstanding their statement to that effect a number of times. Finally, I'd just reiterate that the Chapter 7 trustee does not have the authority to appeal this particular issue. His charge under Section 704 is to close out the bankruptcy estate as expeditiously as possible. Claiming that this whole dispute should have been arbitrated with respect to the fraudulent transfer claims is very much inimical to what the trustee is charged with doing, which is to wind things up, not prolong things during arbitration. So he neither has the incentive nor the authority, which leaves nobody to appeal except for NUTRA. And that's why I urge the Court to reach the merits of this case because it does involve such a flagrant violation of Section 6.1.2, the Arbitration Agreement and the Broad Delegation Clause. Unless the Court has any questions, that would conclude the argument. Thank you, Mr. Ledger. Your case is under submission and the Court is in recess.